IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FARIDEH B. BOWLES ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action, Case No. _____ |
| ) | |
| VANDERBILT UNIVERSITY ) | JURY DEMAND |
| MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now Plaintiff, Farideh B. Bowles, by and through her undersigned counsel, and for her Complaint against Defendant, Vanderbilt University Medical Center, Plaintiff states as follows:

### THE PARTIES

1. Plaintiff, Farideh B. Bowles, (hereinafter "Mrs. Bowles" or "Plaintiff") is currently a resident and citizen of Tennessee. At all times relevant to the facts of this complaint, Mrs. Bowles was a resident and citizen of Brentwood (Williamson County), Tennessee. Mrs. Bowles is a disabled (or regarding as having a disability) female of Iranian national origin.

2. Upon information and belief, Vanderbilt University Medical Center, (hereinafter "VUMC" or "Defendant") is a domestic, for profit corporation with its principal address located at 1211 Medical Center Drive, Nashville, Tennessee.

Defendant is authorized to be and doing business in Nashville, Davidson County, Tennessee, where the allegations set forth in this complaint occurred.

## JURISDICTION AND VENUE

3. This action arises under Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., T.C.A. Section 4-21-401, et seq., Tennessee Public Protection Act of 1990, Tennessee Common Law of Retaliatory Discharge, Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

4. This Court has jurisdiction over the federal claims in this dispute pursuant to 28 U.S.C. § 1331 in that this case arises under Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

5. This Court has supplemental jurisdiction over the Tennessee claims in this dispute and should exercise such jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this matter took place in Davidson County, Tennessee, at the Defendant's facility located in Nashville, Tennessee.

7. Mrs. Bowles filed a charge of discrimination with the Equal Employment Opportunity Commission (See "Charge of Discrimination" attached hereto as Exhibit 1.) in a timely manner and was issued a Notice of Right to Sue letter which is attached as Exhibit 2 to this Complaint. Mrs. Bowles has filed this Complaint within the time allowed after receipt of her Notice of Right to Sue letter.

2

Case 3:11-cv-00597   Document 1   Filed 06/20/11   Page 2 of 18 PageID #: 2

## FACTUAL BACKGROUND

8. VUMC is a collection of several hospitals and clinics, as well as schools of medicine and nursing associated with Vanderbilt University in Nashville (Davidson County), Tennessee. VUMC has a hospital facility with 832 beds providing a full range of health care services to the Nashville area and the surrounding community.

9. Mrs. Bowles was hired by Defendant in July 1989 as a Research Assistant, in the Department of Cell Biology. She worked in various departments as a Research Assistant until the time of her termination. Those departments were as follows: February 1991 – Department of Biochemistry, July 1996 – Department of Dermatology, 2000 to 2001 – Department of Infectious Diseases, 2002-2005 – Maternity Leave and break in employment, November 2005 – Department of Orthopedic Rehabilitation. Defendant wrongfully terminated Mrs. Bowles' employment on July 19, 2010.

10. When Mrs Bowles began working in the Department of Orthopedic Rehabilitation, she was working in a laboratory located in Medical Center North, Room T-4225. In the spring of 2006, she lodged a complaint with the Department of Occupational Health concerning chemical odors and a malfunctioning hood and sink. The odors were so strong that staff working in this lab was forced to open windows to provide some ventilation. Mrs. Bowles began having unusual respiratory symptoms and problems.

11. In October 2008, the Department moved the lab to Room BB0213/BB0214 located in the basement of the same building. Mrs. Bowles was assigned the responsibility for the laboratory's inventory and the disposal of

3

approximately a twenty-year accumulation of expired chemicals by the Department of Environmental Safety.

12. During 2007 and 2008, Mrs. Bowles lodged multiple complaints to Mr. Mark Pavlack, Compliance Officer, and to the Department of Environmental Safety. Mr. Pavlack investigated her complaints and noted incorrect and expired signings, improper disposal techniques, and lack of disposal containers for hazardous waste. He also identified evidence supporting her complaints of no records of prior disposals being kept by the Department and inappropriate materials being routinely dumped in the sinks.

13. On April 27, 2009, Mrs. Bowles requested FMLA leave through the Occupational Health Department. Defendant approved her leave request.

14. On April 28, 2009, Mrs. Bowles reported the lab to the Department of Environmental Safety for continued violations of chemical waste disposal practices after her complaints to her supervisor were ignored. Mrs. Bowles also brought this issue to the attention of the Department Administrator, Ms. Beth Glascock. Mrs. Bowles was officially reprimanded by Ms. Beth Glascock and Mr. Steve Moore for reporting the lab's issues to the Department of Environmental Safety. Instead of addressing the lack of ventilation and improper disposal of chemicals about which Mrs. Bowles had complained of, Ms. Glascock suggested that Mrs. Bowles be allowed to take leave with pay or that she request disability leave.

15. On May 4, 2009, Mrs. Bowles underwent a Mastectomy on her right breast for treatment of breast cancer while on FMLA leave. Moreover, Mrs. Bowles' medical condition constitutes a disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. On May 15, 2009, her physician approved her return to

4

work. Upon returning to work, Ms. Glascock demanded that Mrs. Bowles obtain further medical clearance despite presenting the statement from her physician. Mrs. Bowles discovered that Ms. Glascock had violated Mrs. Bowles privacy and inappropriately obtained her private health information. When Mrs. Bowles questioned Ms. Glascock as to how she came into possession of her health records, Ms. Glascock rudely refused to provide an explanation and handed her health information in an envelope marked "Confidential."

16. On May 21, 2009, Mrs. Bowles filed a report identifying her injuries to Defendant's Department of Occupational Health. She also asked this Department to file a report/complaint with the Tennessee Department of Labor through this same office. The report filed with the Tennessee Department of Labor was cancelled by Defendant's Department of Risk Management without sending Mrs. Bowles any further notification.

17. On May 26, 2009, Mrs. Bowles notifie Defendant's Director of Occupational Health regarding the issues in her complaint and her subsequent injuries. On May 27, 2009, she discussed safety issues in the lab with Ms. Lou Ann Burnett, Biological Safety Officer, with Defendant's Department of Health and Safety.

18. In June 2009, Mrs. Bowles received her annual performance evaluation from Dr. Ginger Holt and Jeffrey Nyman. Mrs. Bowles was questioned and reprimanded during her performance evaluation for reporting her complaints to the Department of Occupational Health. Mrs. Bowles received an evaluation score of 3.0 out of 5.0, despite the fact that on her previous evaluation, Mrs. Bowles scored a 4.8.

19. In September 2009, Mrs. Bowles was assigned a new Supervisor, Mr. Dan Perrien who continued Defendant's pattern of disregarding Mrs. Bowles' complaints and

5

of retaliating and harassing her because of her complaints. On September 23, 2009, Mrs. Bowles was reprimanded by Ms. Glascock for her alleged attitude and mishandling a report regarding burst pipes in the lab that had occurred in June 2009. On September 30, 2009, Mrs. Bowles discussed the conditions in the lab and her health with Dr. Herbert Schwartz, Department Chairman.

20. December 19, 2009, Mrs. Bowles discussed her employment and harassment issues with the Employee Relations Department. She was referred to the Equal Opportunity, Affirmative Action and Disability Services Department ("EAD"). Mrs. Bowles met with D. Michael Carter, Compliance Officer, on four occasions to discuss her employment and harassment issues.

21. February 8, 2010, Mr. Perrien referred Mrs. Bowles to the Disability Office. Mrs. Bowles spoke with Ms. Tiffany Taylor, Director of Disability.

22. May 5, 2010, Mrs. Bowles received her performance evaluation from Mr. Perrien. He scored her evaluation a 2.8 on a 5.0 scale.

23. May 13, 2010, Mrs. Bowles requested a meeting with the Chairman of the Department of Orthopedic Rehabilitation, Dr. Schwartz, which was denied.

24. On June 20, 2010, Mr. Perrien demanded that Mrs. Bowles provide written protocols and procedures for the lab. During this same time period, Mr. Perrien instructed her to improperly dump hazardous wastes into the sink and not label wastes as hazardous.

25. On July 8, 2010, Defendant collected samples of wastes after an experiment performed by Mrs. Bowles. The samples were sent to an outside lab to evaluate them for hazardous material content. A total of six (6) samples were submitted

6

for analysis as directed by the Department of Environmental Safety. Mrs. Bowles did not receive any of the samples testing results. Mr. Perrien placed Mrs. Bowles on administrative leave allegedly while an investigation into her complaints was taking place. Mrs. Bowles anticipated that Defendant was planning to terminate her employment. While on administrative leave, Mrs. Bowles attempted to contact some of her co-workers to determine if they would be witnesses on her behalf if she had to pursue a lawsuit against Defendant.

26. On July 19, 2010, Mr. Perrien wrongfully and maliciously terminated Mrs. Bowles' employment in the pretext that she had engaged in inappropriate behavior in contacting these employees. In fact, her termination was a result of national origin discrimination, disability discrimination and retaliation in violation of Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., T.C.A. Section 4-21-401, et seq., Tennessee Public Protection Act or 1990, Tennessee Common Law of Retaliatory Discharge, Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

27. Mrs. Bowles filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission in a timely manner and was issued a Notice of Right to Sue letter which is attached as Exhibit 1 to this Complaint.

7

Case 3:11-cv-00597   Document 1   Filed 06/20/11   Page 7 of 18 PageID #: 7

# COUNT I
## TENNESSEE PUBLIC PROTECTION ACT
## COMMON LAW WHISTLE BLOWER RETALIATION

28. The Plaintiff re-alleges and incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 27 of this Complaint.

29. At all relevant dates herein, Plaintiff repeatedly reported health and safety violations related to her place of employment. Plaintiff reported her complaints to her supervisors, the Department of Environmental Safety, the Department of Occupational Health, and to EAD.

30. In response to her complaints, Plaintiff's supervisors took no action and reprimanded her for making her complaints outside of her department to the Defendant's proper authorities.

31. Plaintiff submits that at all pertinent times and consistent with the Tennessee Public Protection Act:

    a) Plaintiff was an employee of the Defendant;

    b) Plaintiff refused to participate in, or to remain silent about, illegal activities;

    c) Defendant placed Plaintiff on administrative leave and subsequently terminated the Plaintiff; and

    d) an exclusive relationship exists between Plaintiff's refusal to participate in, or to remain silent about, illegal activities and Defendant placing Plaintiff on administrative leave and ultimate termination of Plaintiff.

8

32. In the alternative, Plaintiff asserts common law whistle-blowing retaliation as follows:

    a) that an employment-at-will relationship existed;

    b) that Plaintiff was placed on administrative leave and ultimately discharged;

    c) that the reason for the administrative leave and discharge was that Plaintiff attempted to exercise a statutory or constitutional right, or for any other reasons which violates a clear public policy by an unambiguous constitution, statutory, or regulatory provision; and

    d) that a substantial factor in Defendant's decision to place Plaintiff on administrative leave and discharge Plaintiff was Plaintiff's exercise of protected rights in compliance with clear public policy.

## COUNT II
## RETALIATION

33. The Plaintiff re-alleges and incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 32 of this Complaint. In the alternative, Plaintiff submits that she was placed on administrative leave and terminated in retaliation for engaging in protected activities. Plaintiff asserts that Defendant retaliated against her in violation of T.C.A. Section 4-21-301, et seq., T.C.A. Section 4-21-401, et seq., Tennessee Common Law of Retaliatory Discharge, Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq..

9

34. Beginning in the spring of 2006 and continuing through July 19, 2010, Plaintiff was subjected to national origin discrimination, disability discrimination, retaliation, and harassment in the workplace. Plaintiff reported harassment, discrimination, retaliation, and health and safety violations to Defendant.

35. At all relevant times as set forth herein, the harassment, discrimination and retaliation from Defendant were so severe and pervasive as to create a hostile work environment which affected the terms, conditions, and/or privileges of Plaintiff's employment with Defendant.

36. At all relevant times as set forth herein, Plaintiff avers the following:

   a) Plaintiff was a member of a protected class;

   b) Defendant's retaliation toward Plaintiff was based on her mulitiple reports and complaints regarding environmental, health and safety violations;

   c) a tangible employment action resulted from Defendant placing Plaintiff on administrative leave and subsequently terminating her employment;

   d) Defendant's harassment of Plaintiff affected the terms, condition and/or privileges of Plaintiff's employment;

   e) Defendant's harassment of Plaintiff created a hostile work environment and/or unreasonably interfered with Plaintiff's work performance;

10

      f)       Defendant had notice of the harassment and discrimination and the hostile work environment and/or the unreasonable interference with Plaintiff's work performance; and

      g)       Defendant failed to take prompt and appropriate corrective action to eliminate the harassment, discrimination and/or retaliation.

37. In July of 2010, a) Plaintiff engaged in a protected activity; b) the exercise of this protected activity was known to Defendant; c) Defendant thereafter took an employment action that was adverse to Plaintiff; and d) there was a causal connection between the protected activity and the adverse employment action.

38. The harassment continued and ultimately resulted in Plaintiff's actual termination on July 19, 2010.

39. At all relevant dates set forth herein, Defendant was vicariously liable for the actions and inappropriate conduct of Defendant's employees, agents, and representatives because: (a) Defendant did not exercise reasonable care to promptly correct and prevent the harassing and retaliatory behavior; (b) Defendant's actions culminated in a tangible employment action; (c) Defendant failed to anti-harassment and anti-retaliation policies; (d) Defendant did not properly train Plaintiff's supervisors regarding Defendant's policies towards a workplace free of discrimination, harassment and retaliation; (e) Defendant did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report environmental, health and safety violations, discrimination, and/or harassment occurring within Defendant's workplace; (f) Defendant improperly retaliated and discriminated against Plaintiff after she reported

11

environmental, health and safety violations; and (g) Defendant had a duty to supervise its employees and agents to prevent and remedy harassment and retaliation.

40. Defendant further failed to properly train and supervise its employees on preventing and avoiding discriminatory and retaliatory practices.

41. Defendant further failed to supervise its management and non-management staff and employees to prevent, discover or correct discriminatory and retaliatory practices that were taking place.

42. Plaintiff sustained injury as a result of the Defendant's negligent hiring, supervision and retention practices while she was employed by Defendant.

43. There is a proximate causal relationship between Defendant's failure to supervise its employees and the injury sustained by Plaintiff.

## COUNT III
## DISABILITY DISCRIMINATION

44. The Plaintiff re-alleges and incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 43 of this Complaint. In the alternative, Plaintiff asserts that Defendant discriminated against her in violation of the Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., and the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.

45. Plaintiff has a "disability," as defined in § 3 of the ADA (42 U.S.C. § 12102), in that she has a present physical impairment that substantially limits a major life activity or a past record of such an impairment, and/or she is perceived or regarded as having such an impairment.

12

Case 3:11-cv-00597   Document 1   Filed 06/20/11   Page 12 of 18 PageID #: 12

46. Plaintiff satisfies the requisite skill, experience, educational and other job related requirements of her former position with Defendant and with or without reasonable accommodation can perform the essential functions of this position. On July 19, 2010, she was, and she continues to be a "qualified individual with a disability" within the meaning of § 101 of the ADA (42 U.S.C. § 12111).

47. Prior to her termination, Plaintiff was an employee of Defendant under § 101(4) of the ADA (42 U.S.C. § 12111(4)).

48. Defendant is a "covered entity" and an "employer" as defined in § 101 of the ADA. (42 U.S.C. § 12111).

49. Defendant's intentionally discriminatory acts toward Plaintiff due to her disability or perceived disability, failure to provide Plaintiff with a reasonable accommodation, and failure to engage in a genuine interactive process or discussion with Plaintiff regarding a reasonable accommodation violate the ADA, 42 U.S.C. §§ 12101 et seq.

50. Plaintiff is entitled to reinstatement of her position with Defendant or of some other equivalent position, back pay, attorneys' fees for the prosecution of this action and for her damages and costs, pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 12117(a).

51. The actions of Defendant and of the Defendants' agent(s) complained of above were done intentionally, knowingly, maliciously, or with reckless indifference to the Plaintiff's federally protected rights in the face of a perceived risk that its action would violate federal law.

## COUNT IV
## NATIONAL ORIGIN DISCRIMINATION

52. The Plaintiff re-alleges and incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 51 of this Complaint. In the alternative, Plaintiff asserts that Defendant discriminated against her in violation of the Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., and Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et seq., based upon her national origin.

53. The Plaintiff is of Iranian national origin.

54. Beginning during the spring of 2006 to July 19, 2010, the Plaintiff states that Defendant failed to take any corrective action after her multiple environmental, health and safety complaints. Plaintiff was placed on administrative leave and subsequently terminated, in part, due to Plaintiff's national origin.

55. Plaintiff's multiple complaints regarding environmental, health and safety violations were not taken seriously by her supervisors. Additionally, Plaintiff's supervisors failed to apply policies consistently between Plaintiff and other similarly situated non-Iranian national origin co-workers.

56. In addition to being discriminated against, Plaintiff was placed on administrative leave in a pretextual course of action and subsequently terminated by Defendant based on Plaintiff's national origin.

57. Plaintiff asserts that she was treated poorly and received disparate treatment as compared to non-Iranian national origin employees who were similarly situated. Plaintiff received discipline such as verbal and written warnings, and verbal harassment for participating in protected activities.

58. The Plaintiff asserts that Defendant violated the Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., and Title VII of the Civil Rights Act, 42 U.S.C. §2000e, et seq., based upon her national origin.

59. Plaintiff asserts that there is a causal connection between Defendant's poor treatment, disparate treatment, discrimination, and termination and the Plaintiff's national origin.

60. At all relevant dates and times as set forth herein, it is averred that:

(a) Plaintiff was subjected to harassment and discriminatory conduct based upon her national origin after Plaintiff began making complaints regarding environmental, health and safety violations;

(b) such conduct of Defendant was unwelcome;

(c) such conduct of Defendant was based on Plaintiff's national origin;

(d) Defendant's conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

(e) at the time such conduct occurred and as a result of such conduct, Plaintiff believed her work environment to be hostile or abusive;

(f) Defendant knew or should have known of the harassment and discrimination;

(g) Defendant failed to take prompt and appropriate corrective action to end the harassment and discrimination;

(h) Plaintiff's national origin was a motivating factor in Defendant's decision to terminate Plaintiff;

(i) the offensive behavior of Defendant was sufficiently severe and/or pervasive as to alter the conditions of Plaintiff's employment and create an abusive working environment; and

(j) the discrimination from Defendant was severe and pervasive as to create a hostile work environment which affected the terms, conditions, and/or privileges of Plaintiff's employment with Defendant.

61. As a result of such unlawful employment practices, Plaintiff was damaged as well as humiliated and embarrassed.

## COUNT V
## PUNITIVE DAMAGES

62. Plaintiff realleges and incorporates as if fully stated herein the allegations contained in Paragraphs 1 through 61 of this Complaint.

63. The wrongful actions of Defendant complained of above were done intentionally; maliciously; recklessly, and/or with knowledge that the actions violated Plaintiff's rights, justifying an award of punitive damages against Defendant.

### APPLICABLE TO ALL COUNTS

64. Plaintiff has suffered direct pecuniary losses as a result of Defendant's violations of the Tennessee Human Rights Act pursuant to T.C.A. Section 4-21-101, et seq.; T.C.A. Section 4-21-301, et seq., T.C.A. Section 4-21-401, et seq., Tennessee Public Protection Act of 1990, Tennessee Common Law of Retaliatory Discharge, Title

VII of The Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq..

65. Plaintiff will continue to suffer direct pecuniary losses as a result of Defendant's culpable acts or omissions as set forth herein, and described above.

66. Plaintiff was harassed and discriminated against by Defendant and is entitled to compensation for incidental damages, attorney's fees, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other non-pecuniary loss.

67. As a result of the discrimination, harassment and retaliation, Plaintiff has suffered embarrassment and humiliation, emotional distress, incidental expenses, lost wages and loss of earning capacity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays as follows:

1. That Defendant be served and required to answer within the time prescribed by law;

2. That a jury of twelve (12) be empaneled to try this cause;

3. That upon the hearing of this cause, Plaintiff be awarded judgment for compensatory damages in an amount of $500,000 or an amount to be determined by a jury;

4. That upon the hearing of this cause, Plaintiff be awarded judgment for punitive damages in an amount of $500,000 or an amount to be determined by a jury;

5. That costs and discretionary costs be taxed against Defendant;

6. That costs and attorney fees be assessed against Defendant;

7. That such other remedies as shall be necessary and proper to eliminate all violations complained of herein be awarded; and

8. For such other, further, general and different relief which Plaintiff may be entitled and as this court may find appropriate.

Respectfully Submitted,

_____
Tracey A. Kinslow, BPR # 017098
DRESCHER AND SHARP PC
1720 West End Avenue, Suite 300
Nashville, Tennessee 37203
(615) 425-7111 office
(615) 425-7110 fax
tkinslow@dsattorneys.com

*Attorney for Plaintiff*